1
2
3
4
5
6
7
8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   PARAMOUNT FARMS, INC.,                    CASE NO. CV F 08-1027 LJO SMS

12                    Plaintiff,          **ORDER ON DEFENDANT'S F.R.Civ.P.**
                                          **12(b)(6) MOTION TO DISMISS**
13        vs.                             (Doc. 12.)

14   VENTILEX B.V.,

15                    Defendant.
                                   /
16

17                              **INTRODUCTION**

18        Defendant Ventilex B.V. ("Ventilex BV") seeks to dismiss plaintiff Paramount Farm, Inc.'s

19   ("Paramount Farms'") breach of contract and warranty claims on grounds that Ventilex BV is not a party

20   Paramount Farms' contract to purchase an almond pasteurization system.  Paramount Farms responds

21   that its complaint sufficiently alleges breach of contract and warranty claims and that Ventilex BV relies

22   on, in part, an unauthenticated document which is not part of the contract at issue.   This Court

23   considered Ventilex BV's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the

24   January 28, 2009 hearing, pursuant to Local Rule 78-230(h).  For the reasons discussed below, this Court

25   DENIES F.R.Civ.P. 12(b)(6) dismissal of Paramount Farms' claims.

26                              **BACKGROUND**

27                              **The Parties**

28        Paramount Farms is a Delaware corporation and describes itself as "the world's largest vertically

                                        1

integrated supplier of pistachios and almonds." Paramount Farms performs in Lost Hills, California

almond processing and packaging for resale. Beginning in 2004, Paramount Farms initiated efforts to

pasteurize almonds to achieve a "5-log" reduction of Salmonella bacteria[1] which was expected to be

imposed by federal and California almond regulators.

Ventilex BV is a Netherlands company and a manufacturer of nut pasteurization systems.

Ventilex BV is the parent company of Ventilex USA, Inc. ("Ventilex USA"), a United States-based sales

unit. Ventilex USA is not a defendant in this action.

**Bid And Specifications For Almond Pasteurization System**

Paramount Farms claims that after months of discussions and negotiations, Ventilex BV emailed

to Paramount Farms a November 8, 2005 Paramount Farms Bid ("Paramount Farms Bid") which

comprises a one-page face letter ("face letter") followed by four pages of specifications

("specifications").[2] The face letter references "VENTILEX USA Inc.," "VENTILEX B.V.," and

"VENTILEX." The face letter includes a signature for "Tom Schroeder President." The face letter

states in pertinent part:

> VENTILEX USA Inc. and VENTILEX B.V. hereby certifies [sic] that the equipment that
> we supply will be accepted by the FDA and USDA for the Pasteurization of Almonds.
> The installation will be repeatable, verifiable, and that data logging will take place, thus
> allowing for trace ability and long term storage of data.
>
> In addition, VENTILEX will work hand in hand with Paramount Farms to make sure that
> the "system" is accepted and "validated". VENTILEX guarantees the VENTILEX
> equipment will be validated and will correct any item found to deficient at our cost.
>
> VENTILEX appreciates your confidence in our company and our equipment, and we will
> work hard to meet your expectations.

Page 4 of the specifications notes: "F.O.B.: VENTILEX B.V., Heerde, The Netherlands" and

"Terms and Conditions: See Attached 'Terms and Conditions' Exhibit A Attached and made part of this

proposal." Page 4 of the specifications further notes:

> VENTILEX appreciates your interest and will work diligently with Paramount Farms on
> this project. We appreciate your trust. We will not let you down.

---

[1]      "5-log" means to reduce the bacteria level by a factor of 100,000 or five zeros.

[2]      In their papers, the parties refer to the Paramount Farms Bid as the "Plans and Specifications."

1   Page 4 of the specifications includes a signature "Tom Schroeder Ventilex USA." The last three pages

2   of the specifications contain a footer noting "VENTILEX" and an Ohio address and telephone and fax

3   numbers.

4   **Proposal Contract And Related Documents For Almond Pasteurization System**

5         Paramount Farms entered into a November 9, 2005 three-page Proposal Contract ("Proposal

6   Contract") to purchase for more than $765,000 an almond pasteurization system ("system"). The

7   Proposal Contract identifies Paramount Farms as "Owner" and Ventilex USA as "Contractor" and is

8   signed by only Paramount Farms and Ventilex USA.[3] The Proposal Contract identifies no other party

9   and incorporates to "constitute the contract" between "Owner and Contractor" several documents,

10  including "This Proposal Contract," the Paramount Farms Bid, and November 9, 2005 Standard

11  Conditions ("Standard Conditions"). The parties do not dispute that the Proposal Contract, Paramount

12  Farms Bid and Standard Conditions are subject to the contract, and in turn their agreement, at issue in

13  this action. The parties dispute whether and a January 2004 revised General Terms and Conditions of

14  Sale ("General Terms and Conditions") are subject to the contract at issue. Paramount Farms claims that

15  it was unaware of the General Terms and Conditions until Ventilex BV filed its motion to dismiss.

16  Ventilex BV claims that the General Terms and Conditions were "expressly incorporated into the

17  Contract."

18        The Standard Conditions provide the following "Contractor's Guarantee":

19      (a) In addition to warranties, representations and guarantees stated elsewhere in the
    contract documents, the Contractor unconditionally guarantees and warrants that all
20  materials and workmanship furnished hereunder shall be without defect and shall
    conform to the Plans and Specifications, and agrees to replace at its sole cost and
21  expense, and to the satisfaction of the Owner, any and all materials which may be
    defective, improperly installed, or which do not conform to the plans and specifications.
22  . . .

23      (b) The Contractor shall repair or replace to the satisfaction of the Owner any or all such
    work that may prove defective in workmanship or materials, which is improperly
24  installed, or which does not conform to the plans and specifications, ordinary wear and
    tear expected, together with any other work which may be damaged or displaced in so
25  doing.

26      (c) In the event of failure to comply with the above stated conditions within a reasonable
    time, the Owner is authorized to have the defect repaired or replaced at the expense of
27

28      [3]    Ventilex BV contends that it is not a party to the Proposal Contract and did not sign it.

3

the Contractor who will pay the costs and charges therefore immediately upon demand, including any reasonable management and administrative costs, and engineering, legal and other consulting fees incurred to enforce with section.

(d) Except as otherwise provided in this Contract, the guarantees and warranties shall remain in effect for one year after the completion of the project.

The General Terms and Conditions address "Liability For Defects" and state: "The Supplier's liability is limited to defects, which appear within a period of one year from delivery."  The Proposal Contract contains a "Warranty" by which "The Contractor warrants that all the equipment covered by this quotation will be free of defects to workmanship and materials for a period of 12 months from start up.  Which is estimated to be: (1, March, 2006)."  (Underlining in original.)

Lastly, the General Terms and Conditions address arbitration:

All disputes arising out of or in connection with the contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said rules.

**System's Performance**

Paramount Farms contends that after it took delivery of the system in early 2006, it has "failed to perform as warranted" and has failed to "achieve a 5-log reduction in Salmonella bacteria as originally warranted" to force Paramount Farms to pasteurize its almonds offsite at a cost of $68,000 per week since April 14, 2008.  Paramount Farms claims that it "has also been forced to purchase a replacement pasteurization system" in excess of $1 million.  Paramount Farms further claims that Ventilex BV has failed to repair, redesign or replace the system as promised.

In early June 2008, Paramount Farms filed an arbitration demand with the American Arbitration Association ("AAA") against Ventilex BV and Ventilex USA.  A few weeks later, Ventilex BV sought to stay the arbitration in New York state court on grounds that it is not a party to the Proposal Contract and incorporated documents.  In late June 2008, Paramount Farms removed the state action to a New York federal court but on July 18, 2008, filed this action against Ventilex BV with this Court to allege what Ventilex BV characterizes as "essentially identical" claims asserted against Ventilex BV in the AAA arbitration.  In October 2008, Paramount Farms withdrew its claims against Ventilex BV in the AAA arbitration to render this action as the apparent sole forum for Paramount Farms' claims against Ventilex BV.

4

**Paramount Farms' Claims Against Ventilex BV**

Paramount Farms' operative original complaint ("complaint") alleges against Ventilex BV:

1.    A (first) breach of written contract cause of action that "Ventilex breached the written Contract"[4] and a (second) breach of express warranty cause of action that "Ventilex has breached the express warranty contained in the Contract" in that:

   a.    The system "has not been validated or approved by any governmental agency for almond pasteurization";

   b.    Ventilex has failed to work with Paramount Farms to ensure that the system is approved or validated;

   c.    The materials and workmanship were defective and failed to perform to plans and specifications; and

   d.    Ventilex failed to repair or replace to Paramount Farms' satisfaction the defective workmanship or materials within a reasonable time;

2.    A (third) breach of implied covenant of good faith and fair dealing cause of action that Ventilex has failed to provide contracted materials, workmanship and services and has failed promptly to remedy defective and nonconforming materials, workmanship and services;

3.    A (fourth) breach of implied warrant of merchantability cause of action that the system's failure to achieve 5-log Salmonella bacteria reduction renders the system "not fit for the purpose in which such goods are generally used"; and

4.    A (fifth) breach of implied warranty of fitness for particular purpose that the "goods provided to [Paramount Farms] by Ventilex were not suitable for [Paramount Farms'] particular needs" in the absence of a 4-log or 5-log Salmonella bacteria reduction.

The complaint alleges damages in excess of $5 million.

/ / /

---

[4]    The complaint defines "Ventilex" as "Ventilex B.V. and each of the fictitiously named Doe defendants." The complaint states: "Ventilex USA is not a party to this action." The complaint appears to refer to "Contract" as the November 9, 2005 Proposal Contract and documents which it incorporates.

**DISCUSSION**

**F.R.Civ.P. 12(b)(6) Motion Standards**

The basis of Ventilex BV's challenge is that it is not a party to the Proposal Contract or incorporated documents to defeat Paramount Farms' breach of contract and warranty claims. Ventilex BV notes: "In the absence of an agreement between Paramount and Ventilex [BV], Paramount's claims simply cannot stand."

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  F.R.Civ.P. 12(b)(6) dismissal is proper when "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102 (1957).

In resolving a F.R.Civ.P. 12(b)(6) motion, the court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted).  A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d at 1162, n. 2. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998). Moreover, a "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)). As such, this Court may consider the Proposal Contract, Paramount Farms Bid and Standard Conditions in that the parties do not dispute that they are part of the contract at issue.

### Breach Of Contract

Ventilex BV argues that it cannot be liable for breach of contract in that it was never a party to a contract with Paramount Farms. "A statement of a cause of action for breach of contract requires a pleading of (1) the contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Acoustics, Inc. v. Trepte Constr. Co.,* 14 Cal.App.3d 887, 913, 92 Cal.Rptr. 723 (1971). Ventilex BV argues that the first element requires "a valid contract *between the parties*" to avoid liability for "entities that are not parties to a contract." *Gen-Probe Inc. v. Center for Neurologic Study,* 853 F.Supp. 1215, 1219 (S.D. Cal 1993) (counterclaim dismissed for failure to allege "existence of a written contract" between the parties).

Ventilex BV contends that the Proposal Contract is between Paramount Farms as Owner and

Ventilex USA as Contractor since the Proposal Contract lists only them as parties and was signed only by them.  Ventilex  BV claims that the contract "clearly states that the Parties are Paramount and Ventilex U.S.," not Ventilex BV.  Ventilex BV notes the complaint's failure to allege that Ventilex BV was a signatory because Ventilex BV "simply was not a signatory."

Paramount Farms responds that Ventilex BV is a party to the "contract" because it manufactured and shipped the system pursuant to the contract, provided specific guarantees under the contract, was bound to perform specific obligations under the contract, and was an agent of signatory Ventilex USA.  Paramount Farms argues that the face letter demonstrates that Tom Schroeder did not sign the face letter for Ventilex USA only in that he signed as "President" without reference or limitation to a particular entity and the face letter carefully distinguishes among Ventilex USA, Ventilex BV and VENTILEX, the collective Ventilex USA and Ventilex BV.

Paramount Farms argues that despite the signatory issue, Ventilex BV was a party to the contract in that it "specifically agreed to perform key obligations under the agreement."  A "person who holds himself out as offering a service cannot complain if in reliance thereon another accepts the offer and agrees to the terms. Such a person becomes a party without being a signator." *Huckell v. Matranga,* 99 Cal.App.3d 471, 481, 160 Cal.Rptr. 177 (1979).  Paramount Farms points to face letter of the Paramount Farms Bid's face letter by which "VENTILEX USA Inc. and VENTILEX B.V. hereby certifies [sic] that the equipment that we supply will be accepted by the FDA and USDA for the Pasteurization of Almonds."

The face letter continues that "VENTILEX will work hand in hand with Paramount Farms to make sure that the 'system' is accepted and 'validated.'" The face letter also provides: "VENTILEX guarantees the VENTILEX equipment will be validated and will correct any item found to be deficient at our cost." Page four the of the Paramount Farms Bid's specifications reveals that the system was shipped from Ventilex BV's overseas plant ("F.O.B.: VENTILEX B.V., Heerde, The Netherlands").

At the outset, this Court faces the challenge to determine, without unavailable, extrinsic evidence, which documents comprise the contract or agreement at issue.  The signed Proposal Contract defines the "Contract Terms" to include itself, the Paramount Farms Bid and Standard Conditions.  This Court is not in a position to conclude that the parties' contract includes the General Terms and

8

1   Conditions given the parties' dispute, requiring consideration of unavailable extrinsic evidence, and the

2   absence of inclusion of the General Terms and Conditions in the defined "Contract Terms" of the

3   Proposal Contract. For purposes of Ventilex BV's F.R.Civ.P. 12(b)(6) motion to dismiss, this Court

4   concludes that the General Terms and Conditions are extrinsic evidence beyond this Court's reach and

5   review.

6          Turning to the documents comprising the contract at issue, the Paramount Farms Bid's face sheet

7   puts Ventilex BV front and center to certify and validate the system. The face sheet treats Ventilex BV

8   and Ventilex USA as a combined entity to no less raise factual issues as to Ventilex BV's status and

9   which cannot be answered on this F.R.Civ.P. 12(b)(6) motion. The Proposal Contract and Paramount

10  Farms Bid reveal that Ventilex BV, at a minimum, offered services which Paramount Farms accepted.

11  Ventilex BV does not avoid Paramount Farms' breach of contract claim by hiding from a lack of clarity

12  in its own documents. The complaint adequately alleges that Tom Schroeder acted as Ventilex BV's

13  agent to bind it.[5] An issue as to the scope of his authority is a factual issue beyond the limits of Ventilex

14  BV's F.R.Civ.P. 12(b)(6) motion. At this pleading stage, this Court is not in a position to conclude that

15  Ventilex BV is not a party to a contract with Paramount Farms regarding the system.[6] This Court rejects

16  Ventilex BV's claims that the Paramount Farms Bid cannot support breach of contract claims and that

17  Ventilex USA or Tom Schroeder could not act as Ventilex BV's agent.

18                                    **Breach Of Express Warranty**

19         "[T]o plead a cause of action for breach of express warranty, one must allege the exact terms of

20  the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately

21  causes plaintiff injury." *Williams v. Beechnut Nutrition Corp.*, 185 Cal.App.3d 135, 142, 229 Cal.Rptr.

22  605 (1986); *see Burr v. Sherwin Williams Co.,* 42 Cal.2d 682, 268 P.2d 1041 (1954).

23         Ventilex BV argues that in the absence of a contract between it and Paramount Farms, Ventilex

24

25         [5]      Ostensible authority stems "from conduct of the principal which leads the third party reasonably to believe
    that the agent is authorized to bind the principal. . . . Although it is established that ostensible authority can be created only
26  by the acts or declarations of the principal, not by those of the agent . . ., the principal need not have been in direct contact
    with the third party; the manifestation of the principal may be to the community at large, and may consist of appointing the
27  agent to a particular position." *Meyer v. Ford Motor Co.*, 275 Cal.App.2d 90, 101-102, 79 Cal.Rptr. 816 (1969).

28         [6]      As such, this Court need not address the parties' arguments regarding promissory estoppel.

BV is not liable for breach of express warranty.  Ventilex BV claims that Paramount Farms' breach of express warranty claim relates "solely" to the express warranty in the contract between Paramount Farms and Ventilex USA.  Ventilex BV further claims it made no "representation that serves as the basis for the express warranty claim."

Paramount Farms responds that the complaint alleges a valid breach of express warranty claim in that "[p]rivity is generally not required for liability on an express warranty because it is deemed fair to impose responsibility on one who makes affirmative claims as to the merits of the product, upon which the remote consumer presumably relies." *Cardinal Health 301, Inc. v. Tyco Electronics Corp.,* 169 Cal.App.4th 116, __ Cal.Rptr.3d __, 2008 WL 5206399, *19 (2008).  Paramount Farms notes Ventilex BV's certification in the face letter of the Paramount Farms Bid that "the equipment that we supply will be accepted by the FDA and USDA for the Pasteurization of Almonds.  The installation will be repeatable, verifiable, and that data logging will take place, thus allowing for trace ability and long term storage of data."  Paramount Farms concludes that such express warranty obviates the need for privity.

As discussed in relation to the breach of contract claim, this Court is not prepared to conclude that Ventilex BV is not a party to a contract with Paramount Farms and in turn not subject to the certification in the Paramount Farms Bid's face letter.  Ventilex BV is plainly named in the paragraph providing the certification that the equipment "will be accepted by the FDA and USDA."  The face letter creates no less than a factual issue, which cannot be resolved here, that Ventilex provided an express warranty of acceptance by FDA and USDA.  Ventilex BV's claim that it "did not cause the statement to be included in the document" is unpersuasive and raises another factual issue beyond the scope of its F.R.Civ.P. 12(b)(6) motion.  The breach of express warranty claim survives Ventilex BV's lack of privity attack.

### Breach Of Implied Covenant Of Good Faith And Fair Dealing

To challenge Paramount Farms' breach of implied covenant of good faith and fair dealing claim, Ventilex BV again points to the absence of a contract between it and Paramount Farms.  Although a claim for breach of the obligation to deal fairly and act in good faith "sounds both in contract and in tort, the existence of the duty which is the subject of the breach depends upon a contractual relationship.  The

particular relationship is that created by the contract . . . in which a covenant of good faith and fair dealing is implied as a matter of law." *Iversen v. Superior Court*, 57 Cal.App.3d 168, 171, 127 Cal.Rptr. 49 (1976).  "The cause of action for breach of the implied covenant of good faith and fair dealing similarly depends on the existence of an enforceable contract. In the absence of a contract, there is no cause of action for breach of the implied covenant."  *Ali v. L.A. Focus Publication*, 112 Cal.App.4th 1477, 1489, 5 Cal.Rptr.3d 791 (2003); *see Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 36, 44 Cal.Rptr.2d 370 (1995) *("*there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship"*).

As noted above, this Court will not conclude, at this pleading stage, that Ventilex BV is not a party to an agreement with Paramount Farms regarding the system.  Like the breach of contract and express warranty claims, the breach of implied covenant of good faith and fair dealing claim survives.

## Breach Of Implied Warranties Of Merchantability

## And Fitness For Particular Purpose

Ventilex BV argues that Paramount Farms' claims of breach of implied warranties of merchantability and fitness for particular purpose fail because Ventilex BV and Paramount Farms "do not stand in vertical privity."

"Vertical privity is a prerequisite in California for recovery on a theory of breach of the implied warranties of fitness and merchantability." *U.S. Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal.App.3d 1431, 1441, 279 Cal.Rptr. 533 (1991).  A California plaintiff alleging breach of warranty must stand in "vertical privity" with the defendant.  *Anunziato v. eMachines, Inc.*, 402 F.Supp.2d 1133, 1141 (C.D. Cal. 2005).  The California Court of Appeal has explained "vertical privity":

> "The term 'vertical privity' refers to links in the chain of distribution of goods. If the buyer and seller occupy adjoining links in the chain, they are in vertical privity with each other and lack of privity would not be available as a defense to the seller in a warranty action brought by the buyer. For example, the distributor is normally in vertical privity with the manufacturer, and the ultimate retail buyer is normally in vertical privity with the dealer. But if the retail buyer seeks warranty recovery against a manufacturer with whom he has no direct contractual nexus, the manufacturer would seek insulation via the vertical privity defense." (Clark & Smith, The Law of Product Warranties (1984) ¶ 10.01[1], p. 10-3.)

*Osborne v. Subaru of America, Inc.,* 198 Cal.App.3d 646, 656, n. 6, 243 Cal.Rptr. 815 (1988).

"[T]here is no privity between the original seller and a subsequent purchaser who is in no way a party

1    to the original sale." *Burr*, 42 Cal.2d at 695, 268 P.2d 1041.  Stated another way, an "end consumer"

2    who "buys from a retailer is not in privity with a manufacturer." *Clemens v. DaimlerChrysler Corp.,*

3    534 F.3d 1017, 1023 (9th Cir. 2008).

4         Ventilex BV argues that Paramount Farms is unable to establish vertical privity with it because

5    the Proposal Contract establishes that Paramount Farms contracted for the system with Ventilex USA,

6    not Ventilex BV.  Paramount Farms responds that it and Ventilex BV were parties to the contract "at

7    issue" to accord direct privity between them.  Paramount Farms criticizes Ventilex BV's reliance on "the

8    paper contract" given the complaint's allegations that "Ventilex" represented positive system testing and

9    approval in "the many dealings" between Paramount Farms and Tom Schroeder.

10        Based on the complaint and the undisputed documents at issue here, this Court cannot conclude

11   that Paramount Farms lacks a direct contractual nexus with Ventilex BV given its certification in the

12   Paramount Farms Bid's face letter that "the equipment we supply will be accepted by the FDA and

13   USDA for the Pasteurization of Almonds."  The complaint and undisputed documents point to links in

14   a chain in the distribution of the system to Paramount Farms.  Ventilex BV has not established

15   conclusively an absence of vertical privity to avoid Paramount Farms' breach of implied warranty

16   claims.

17                                   **Limitations Period**

18        Ventilex BV contends that a one-year limitations period established by the Proposal Contract and

19   General Terms and Conditions bar Paramount Farms' claims.  California Commercial Code section 2725

20   permits parties to reduce the four-year limitations period for breach of a sale contract: "An action for

21   breach of any contract for sale must be commenced within four years after the cause of action has

22   accrued.  By the original agreement the parties may reduce the period of limitation to not less than one

23   year but may not extend it." *See Therma-Coustics Manufacturing, Inc. v. Borden, Inc.*, 167 Cal.App.3d

24   282, 297, 213 Cal.Rptr. 611 (1985) ("The one-year limitation provisions here do not limit plaintiff's

25   remedy, but limit the time within which it may pursue that remedy, and, moreover, do so in a way which

26   is statutorily and judicially acceptable").

27        Ventilex BV points out that the Proposal Contract contains a "Warranty" by which "The

28   Contractor warrants that all the equipment covered by this quotation will be free of defects to

                                          12

workmanship and materials for a period of <u>12 months</u> from start up.  Which is estimated to be: <u>(1, March, 2006).</u>"  (Underlining in original.)  Ventilex BV further notes that the General Terms and Conditions address "Liability For Defects" and state: "The Supplier's liability is limited to defects, which appear within a period of one year from delivery."  Ventilex BV argues that the complaint does not allege a defect arising within a year of the acknowledged early 2006 delivery of the system in that the complaint references testing "[s]ince August 15, 2007" revealed that the system "has failed to perform as warranted."

Paramount Farms characterizes the General Terms and Conditions as unauthenticated, extrinsic evidence unrelated to its complaint's allegations and the Proposal Contract and which it had not seen prior to Ventilex BV's motion to dismiss.  To address the timeliness of its claims, Paramount Farms points to the complaint's allegations that:

1.    From the early 2006 delivery of the system and continuing forward, Paramount Farms tested the system to obtain regulatory validation and approval "in advance of the applicable compliance and enforcement deadlines";

2.    After Paramount Farms requested assistance in these efforts, Ventilex BV "did not or could not address the fundamental design flaws of the System"; and

3.    "Since delivery in early 2006 and to date, Ventilex continued to assure [Paramount Farms] that they System would eventually perform as warranted and would be validated and approved in advance of the USDA Mandatory Pasteurization Rule deadline, but it has not."

Paramount Farms argues that its claims survive a one-year limitations period in that the complaint demonstrates that Paramount Farms immediately requested Ventilex BV's assistance with the inoperable system and that Ventilex BV repeatedly assured that problems would be solved.  Paramount Farms further notes that the system never started up to initiate the limitations period in that the system was neither fully operational, approved nor validated to perform even as warranted.  Paramount Farms points out that the Proposal Contract's warranty does not set a deadline to commence legal action within one year of accrual of claims because it merely warrants the equipment "will be free of defects due to workmanship and materials for a period of <u>12 months</u> from start up."  Lastly, Paramount Farms contends

13

1  that the complaint alleges Ventilex BV's repeated assurances of necessary repairs to estop Ventilex BV

2  to assert a limitations defense.

3        Paramount Farms' points are well taken.  Ventilex BV relies on a liability limitation in the

4  General Terms and Conditions which has not been conclusively shown to be incorporated in the parties'

5  agreement.  The Proposal Contract's warranty does not designate a one-year limitations period to pursue

6  legal action.  The limitations defense raises factual issues as to when Paramount Farms' claims accrued

7  given undetermined precise delivery date of a fully operational system and Ventilex BV's alleged

8  assurances that the system would perform as warranted.  The complaint's allegations and limited record

9  available to this Court prevent barring Paramount Farms' claims based on a limitations defense.

10                            **Arbitration And Stay**

11        Ventilex BV argues that if Paramount Farms' claims are not dismissed, they should be arbitrated

12  pursuant to an arbitration provision in the General Terms and Conditions: "All disputes arising out of

13  or in connection with the contract shall be finally settled under the Rules of Arbitration of the

14  International Chamber of Commerce by one or more arbitrators appointed in accordance with the said

15  rules."  Ventilex BV contends that the arbitration provision applies in that the Paramount Farms Bid,

16  the "sole" document to mention Ventilex BV, incorporates by reference the arbitration provision.

17        Again, Paramount Farms responds that its is not bound by the General Terms and Conditions'

18  arbitration provision in that the Proposal Contract did not incorporate the General Terms and Conditions,

19  which are unauthenticated and were not provided to Paramount Farms until Ventilex BV filed its motion

20  to dismiss.

21        Arbitration is a way to resolve disputes "that the parties have agreed to submit to arbitration."

22  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920 (1995).  Arbitration clauses

23  limit a court's power: "Our role is strictly limited to determining arbitrability and enforcing agreements

24  to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." *Republic of Nicaragua*

25  *v. Standard Fruit Co.*, 937 F.2d 469, 479 (9th Cir. 1991), *cert. denied*, 503 U.S. 919, 112 S.Ct. 1294

26  (1992); *see Muh v. Newberger, Loeb & Co., Inc.*, 540 F.2d 970, 972 (9th Cir. 1976) (If the parties have

27  agreed to arbitrate, "the entire controversy must be referred to the arbitrator, including the validity of the

28  contract.") A contractually based arbitration "can be brought to conclusion entirely extrajudicially, and

1    . . . the judiciary's supervision is limited to confirming, vacating, or correcting any resultant award."

2    *Jordan-Lyon Productions, Ltd. v. Cineplex Odeon Corp.*, 29 Cal.App.4th 1459, 1468, 35 Cal.Rptr.2d

3    200, 205 (1994)*; Brock v. Kaiser Foundation Hospitals*, 10 Cal.App.4th 1790, 1806, 13 Cal.Rptr.2d 678

4    (1992).

5            As explained above, this Court is not in a position to conclude that the General Terms and

6    Conditions apply given their uncertain status and apparent factual issues as to their application.  There

7    is nothing conclusive that Ventilex BV and Paramount Farms agreed to arbitrate their disputes given the

8    factual issues surrounding an agreement between them.  Based on the complaint and available extrinsic

9    evidence, this Court is not prepared to direct the parties to arbitrate under the Rules of Arbitration of the

10   International Chamber of Commerce.

11           Ventilex BV further argues that a stay of this action is appropriate given the pending arbitration

12   between Ventilex USA and Paramount Farms.  Ventilex BV contends that a stay promotes judicial

13   economy and efficient use of resources of the Court, parties and counsel in that the pending arbitration

14   may dispose of issues and claims and clarify issues raised in this action.  Ventilex BV notes an absence

15   of hardship to Paramount Farms who will be present its case "against the actual contractually bound

16   party in arbitration."  Ventilex BV pledges not to hinder the pending arbitration.

17           Paramount Farms characterizes Ventilex BV's stay suggestion as a "ploy" to avoid its

18   obligations" to Paramount Farms.  Paramount Farms discounts judicial economy and efficient use of

19   resources in that the doctrine of issue preclusion does not apply given Ventilex BV's denial of

20   involvement in the transaction subject to the arbitration between Paramount Farms and Ventilex USA.

21   *See Vandenberg v. Superior Court*, 21 Cal.4th 815, 834, 88 Cal.Rptr.2d 366 (1999) ("a private

22   arbitration award, even if judicially confirmed, can have no collateral estoppel effect in favor of third

23   persons unless the arbitral parties agreed, in the particular case, that such a consequence should apply.")

24   Paramount Farms contends there will be no disposition of issues between it and Ventilex BV to produce

25   judicial economy from the Paramount Farms-Ventilex USA arbitration.  Paramount Farms further argues

26   that it will suffer prejudice from a stay given Ventilex BV's anticipated failure to cooperate to provide

27   evidence and witnesses germane to the issues in the Paramount Farms-Ventilex USA arbitration.

28           "[A] court can properly stay a suit before it if *any* issue in the suit is arbitrable, even if some

                                                      15

issues are not." *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 361 (7th Cir.) (italics in original), *cert. denied*, 522 U.S. 912, 118 S.Ct. 294 (1997).   A district court shall stay further proceedings and order arbitration if it determines that: (1) a valid agreement to arbitrate exists; and (2) the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir.2000); *Lucas v. Gund, Inc.*, 450 F.Supp.2d 1125, 1130 (C.D. Cal. 2006). The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254-255, 57 S.Ct. 163 (1936).  As "a matter of its discretion to control its docket," a district court may stay litigation among non-arbitrating parties pending the outcome of arbitration.  *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 20, n. 23, 103 S.Ct. 927 (1983).  "Hence, federal courts have not hesitated to stay the litigation of nonarbitrable claims until the conclusion of arbitration, provided that economies of time and effort for court and parties can thereby be achieved and that 'the party seeking the stay can demonstrate that he will not hinder the arbitration, that the arbitration will be concluded within a reasonable time; and that the delay will not work an undue hardship on the party opposing the stay.'" *Janmort Leasing, Inc. v. Econo-Car Intern., Inc.,* 475 F.Supp. 1282, 1293 (quoting *Societe Nationale v. General Tire & Rubber Co.*, 430 F.Supp. 1332, 1334 (S.D.N.Y.1977)).

As explained above, this Court is unable to conclude that Paramount Farms and Ventilex BV entered into a "valid agreement" to arbitrate to address the issues between them.  Ventilex BV identifies no concrete or discernable benefits to warrant a stay of this action, especially considering its prior rejection of arbitration and Paramount Farms' expectations of its lack of cooperation.  Ventilex BV's points regarding a non-arbitrating party's derivative liability are inconsistent with its arguments that it is removed from the transaction at issue.

Moreover, "'if there is even a fair possibility that the stay . . . will work damage to some one else,' the stay may be inappropriate absent a showing by the moving party of 'hardship or inequity.'" *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (quoting *Landis v. North American Co.*, 299 U.S. 248, 255, 57 S.Ct. 163 (1936)).  A possibility exists that a stay will damage Paramount Farms given delay to resolve its claims and the absence of an active forum to

16

1  determine its dispute with Ventilex BV.  Ventilex BV demonstrates no hardship or inequity to continue

2  with this action.  As such, a stay is not in order.

3                          **CONCLUSION AND ORDER**

4          For the reasons discussed above, this Court DENIES F.R.Civ.P. 12(b)(6) dismissal, submission

5  to arbitration or a stay of this action.

6          IT IS SO ORDERED.

7  **Dated:    January 22, 2009          /s/ Lawrence J. O'Neill**
                                        UNITED STATES DISTRICT JUDGE