# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARAMOUNT FARMS, INC., | CASE NO. CV F 08-1027 LJO SKO |
| Plaintiff, | **ORDER ON ATTORNEY FEES** (Doc. 120.) |
| vs. | |
| VENTILEX, B.V., | |
| Defendant. / | |

## INTRODUCTION

After prevailing at a court trial on plaintiff Paramount Farms, Inc.'s ("Paramount Farms'") breach of contract and warranty claims, defendant Ventilex, B.V. ("Ventilex BV") seeks to recover attorney fees of $1,185,018.90. Paramount Farms responds that it is not subject to an attorney fees award in that Paramount Farms would not be entitled to fees if it had prevailed. This Court considered Ventilex BV's attorney fees motion on the record without a hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DENIES Ventilex BV's attorney fees motion.

## BACKGROUND

### Summary

This action arises out of Paramount Farms' purchase of an almond pasteurization system designed and manufactured by Ventilex BV. Paramount Farms claimed that the pasteurization system did not obtain governmental approval which Ventilex BV guaranteed. Ventilex BV denied that it is

1

party to an agreement with Paramount Farms to bind it to a guarantee to obtain governmental approval.

Paramount Farms, a Delaware corporation, processes, produces and markets almonds and pistachios and describes itself as "the world's largest vertically integrated supplier of pistachios and almonds." Paramount Farms performs almond processing at its facilities in Lost Hills, California. Beginning in 2004, Paramount Farms initiated efforts to pasteurize almonds to achieve a "5-log" reduction of Salmonella bacteria[1] which was expected to be imposed by federal and California almond regulators.

Ventilex BV is a Dutch company and manufactures nut pasteurization systems, including the 11 THP Deluxe Ventilex Nut Pasteurization System ("Ventilex System"), which was designed and largely manufactured by Ventilex BV. Ventilex BV specializes in manufacturing industrial machinery, particularly fluid bed drying equipment used in food, concrete and spice industries.

Ventilex USA, Inc. ("Ventilex USA") is not a defendant in this action. Ventilex USA is a Delaware corporation with its principal place of business in Ohio. Ventilex BV is Ventilex USA's sole shareholder. Ventilex USA sells products of Ventilex BV and others in the United States.

**Agreement To Purchase Ventilex System**

Paramount Farms entered into a November 9, 2005 three-page Proposal Contract ("Proposal Contract") to purchase for more than $765,000 the Ventilex System.[2] The Proposal Contract identifies Paramount Farms as "Owner" and Ventilex USA as "Contractor" and was signed by Paramount Farms and Ventilex USA,[3] the only parties listed in the Proposal Contract's notice provision. The Proposal Contract identifies no other party and identifies to "constitute the contract" between "Owner and Contractor" several documents, including a November 8, 2005 letter ("November 8 letter") of Ventilex USA President Tom Schroeder and the nine-page November 9, 2005 Paramount Farms Inc. Standard Conditions ("Paramount Farms Standard Conditions").

The November 8 letter is entitled "Ventilex Pasteurization System" and references "VENTILEX

---

[1]  "5-log" means to reduce the bacteria level by a factor of 100,000 or five zeros.

[2]  The Ventilex System comprised an almond pasteurizer, drier and cooler.

[3]  Ventilex BV contends that it is not a party to the Proposal Contract and did not sign it.

2

USA Inc.," "VENTILEX B.V.," and "VENTILEX." The November 8 letter includes a signature for "Tom Schroeder President," with no entity specified. The November 8 letter states in pertinent part:

> VENTILEX USA Inc. and VENTILEX B.V. hereby certifies [sic] that the equipment that we supply will be accepted by the FDA and USDA for the Pasteurization of Almonds. The installation will be repeatable, verifiable, and that data logging will take place, thus allowing for trace ability and long term storage of data.
>
> In addition, VENTILEX will work hand in hand with Paramount Farms to make sure that the "system" is accepted and "validated". VENTILEX guarantees the VENTILEX equipment will be validated and will correct any item found to deficient at our cost.
>
> VENTILEX appreciates your confidence in our company and our equipment, and we will work hard to meet your expectations.[4]

The Paramount Farms Standard Conditions includes the following attorney fees provision ("attorney fees provision"):

> Attorney's Fees
>
> If either party becomes involved in arbitration or litigation arising out of this Contract or the performance or enforcement of it, then the party prevailing in such arbitration or litigation shall be entitled to reasonable attorney's fees and expert witnesses' fees, in addition to other costs, expenses and disbursements. (Underlining in original.)

**Paramount Farms' Claims Against Ventilex BV**

Paramount Farms' operative original complaint ("complaint"), filed on July 18, 2008, alleges that "[i]n the Plans and Specifications expressly incorporated into the Contract, Ventilex[5] promised to manufacture, deliver and install the System, and guaranteed that the System would meet certain enumerated design and operational specifications." The complaint quoted the approval guarantee and referenced the attorney fees provision: "The Standard Conditions also contain an attorney's fees provision providing that the prevailing party to any litigation arising under the Contract is entitled to costs, fees and disbursements."

The complaint alleges that "Ventilex did not or could not address the fundamental design flaws of the System that prevented it from achieving the required results and being validated and approved."

---

[4] This Court will refer to the November 8 letter's three above paragraphs as the "approval guarantee."

[5] The complaint defines "Ventilex" as "Ventilex B.V. and each of the fictitiously named Doe defendants." The complaint states: "Ventilex USA is not a party to this action." The complaint appears to refer to "Contract" as the Proposal Contract and documents which it incorporates.

3

The complaint further alleges that since August 15, 2007, Paramount Farms' Ventilex System "has been tested by TERP[6] for validation at least four times," "has failed to perform as warranted," and has failed to "achieve a 5-log reduction in Salmonella bacteria" or "even a 4-log reduction" to force Paramount Farms to pasteurize its almonds offsite at a cost of $68,000 per week since April 14, 2008 and to purchase a replacement pasteurization system in excess of $1 million.

As to specific claims against Ventilex BV, the complaint alleges:

1. A (first) breach of written contract claim that "Ventilex breached the written Contract" and a (second) breach of express warranty claim that "Ventilex has breached the express warranty contained in the Contract"[7] in that:

   a. The Ventilex System "has not been validated or approved by any governmental agency for almond pasteurization";

   b. Ventilex has failed to work with Paramount Farms to ensure that the system is approved or validated;

   c. The materials and workmanship were defective and failed to perform to plans and specifications; and

   d. Ventilex failed to repair or replace to Paramount Farms' satisfaction the defective workmanship or materials within a reasonable time;

2. A (third) breach of implied covenant of good faith and fair dealing claim that "Ventilex" has failed to provide contracted materials, workmanship and services and has failed promptly to remedy defective and nonconforming materials, workmanship and services;

---

[6] TERP is the Technical Expert Review Panel which the Almond Board of California created to review almond pasteurization technologies and to validate whether particular technology provided required salmonella reduction.

[7] Nearly identical to the breach of contract claim, the breach of express warranty claim alleges:

Pursuant to the signed, written Contract, Ventilex unconditionally guaranteed and warranted that the System would be validated by relevant governmental agencies for almond pasteurization, and that Ventilex would work with PFI [Paramount Farms] to make sure the System was validated and approved. Ventilex also unconditionally guaranteed and warranted that the System would perform to written specifications attached to the Contract and be free of defects due to workmanship and materials. Finally, Ventilex guaranteed that it would repair or replace to PFI's satisfaction any and all defective workmanship or materials which were improperly installed or which did not conform to the parties' plans and specifications, and that if it failed to make such repair or replacement within a reasonable time it would be fully responsible for the cost of having the defect repaired or replaced at its sole expense.

3. A (fourth) breach of implied warranty of merchantability claim that the system's failure to achieve 5-log Salmonella bacteria reduction renders the system "not fit for the purpose in which such goods are generally used"; and

4. A (fifth) breach of implied warranty of fitness for particular purpose claim that the "goods provided to [Paramount Farms] by Ventilex were not suitable for [Paramount Farms'] particular needs" in the absence of a 4-log or 5-log Salmonella bacteria reduction.[8]

The complaint alleges damages in excess of $5 million but Ventilex BV notes that such amount was "later quantified by Plaintiff's expert as in excess of $14 million." Each of the complaint's claims, except breach of the implied covenant of good faith and fair dealing, sought "reasonable attorneys' fees and costs" and the complaint's prayer for each claim sought "reasonable attorney fees and costs."

### **Trial**

This Court's August 23, 2010 decision granted Ventilex BV summary adjudication on Paramount Farms' breach of implied covenant of good faith and fair dealing claim and on Paramount Farms' overhead and liquidated damages claims. This Court conducted a November 1-4, 2010 court trial on Paramount Farms' remaining breach of contract and express and implied warranty claims. Paramount Farms notes that it proceeded at trial "squarely focused on proving liability under the *Approval Guarantee*." (Italics in original.) One of the parties' joint exhibits included the Paramount Farms Standard Conditions and its attorney fees provision.

The parties note that at the trial's outset, Paramount Farms' lead counsel Christopher Van Gundy ("Mr. Van Gundy") advocated that the approval guarantee was part of a contract between Paramount Farms and Ventilex BV. The parties point to this Court's and Mr. Van Gundy's early trial comments:

> MR. VAN GUNDY: . . . the approval guarantee was part of the contract, there is a little contract within a contract twist here that Ventilex B.V., was it or was it not a party to that approval guarantee. If it was, the parties agree the approval guarantee was part of the contract, so in that sense, Ventilex B.V. would be a party to the contract. That would add that if that's the case, and that's what this trial is about, whether Ventilex B.V. is party to the guarantee, if that's the case, then Ventilex B.V.'s liability under the contract

---

[8] Both breach of implied warranty claims allege that Paramount Farms "contracted with Ventilex for the purchase, delivery and installation of an 11 THP Deluxe Ventilex Nut Pasteurization System at a cost of approximately $765,481.25."

5

would be circumscribed by its obligations within the approval guarantee, in other words, the greater contract involved arbitration clauses, et cetera, et cetera, those wouldn't apply, but to the extent that Ventilex B.V. is a party to the guarantee and it breached that guarantee, it is a breach of express warranty, breach of contract.

. . .

THE COURT: Well, from what I understand, based on what he just stated, his position is different from what I stated. And that is, his position is that the guarantee is a part of the contract. Because it is a part of the contract, at least that portion of the contract is the contract that he is relying on to state that it is a breach.

. . .

MR. VAN GUNDY: Yes, your Honor, I believe you have stated our position correctly and in one sense, to simplify the case, we allege that Ventilex B.V. is a party to that approval guarantee, that we allege that approval guarantee is an express warranty under the law and there are obligations and remedies associated with that. The fact that the approval guarantee was then part of the contract is sort of another layer to it, but the core of the case is were they a party to this guarantee, are they liable under this guarantee and we believe the evidence will show that.

Later during trial's first day, Mr. Van Gundy clarified his position:

THE COURT: Well, is it your position that the guarantee is a separate contract?

MR. VAN GUNDY: It is a separate contract.

. . .

I don't think B.V. is a party to the greater contract.

. . .

. . . this approval guarantee is a self-standing promise that's enforceable against Ventilex USA and Ventilex BV.

THE COURT: . . . I will call it the major versus minor contract.

. . .

On the major contract, you agree that B.V. is not a party?

MR. VAN GUNDY: I agree to that, your Honor.

THE COURT: All right.  So we are looking at the minor contract, and your position is that the minor contract, who are the parties to that?

MR. VAN GUNDY: Ventilex USA, Inc. and Ventilex B.V.

THE COURT: And?

. . .

And Paramount.

6

>MR. VAN GUNDY: Yes, but because it is express warranty . . .

Mr. Van Gundy further explained Paramount Farms' position:

>THE COURT: I think you are arguing that the alleged guarantee is part and parcel of the contract. It is not its own separate contract, it is part of the contract.
>
>MR. VAN GUNDY: I think it can function separately. It is a separate obligation.
>
>THE COURT: Well, which contract are you suing on?
>
>MR. VAN GUNDY: I am suing on the first express warranty because we believe that was given to us as shown by the spring 2005. And I believe because it was part of the larger contract, that B.V. has contractual obligations in that regard, but again those would be delimited by the approval guarantee.

At the conclusion of the trial's first day, this Court concluded that Paramount Farms was limited to a breach of express warranty claim in the absence of evidence to support breach of contract and implied warranty claims. The remainder of the trial proceeded on the breach of express warranty claim. On the final day of trial, this Court granted Ventilex BV's F.R.Civ.P. 52(c) motion for judgment on partial findings to conclude this action in Ventilex BV's favor.

## DISCUSSION

### Controlling California Law

Ventilex BV points to California law to support its request for attorney fees. "Because this case is based on diversity jurisdiction, we are obligated to apply California state law regarding attorneys' fees." *Farmers Ins. Exchange v. Law Offices of Conrado Sayas*, 250 F.3d 1234, 1237 (9th Cir. 2001). In a federal action, state law is relevant to assess "whether the contractual attorney's fee obligation was valid and enforceable." *Matter of Sheridan*, 105 F.3d 1164, 1167 (7th Cir. 1997). "State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

California Code of Civil Procedure section 1033.5(a)(1) permits recovery of attorney fees "when authorized by . . . Contract." Under California Code of Civil Procedure section 1021, the "measure and mode" of attorney fees "is left to . . . agreement," unless attorney fees "are specifically provided for by statute." California Civil Code section 1717 ("section 1717") addresses recovery of attorney fees in contract actions and provides:

>   (a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, **whether he or she is the party specified in the contract or not**, shall be entitled to reasonable attorney's fees in addition to other costs. (Bold added.)

### **Section 1717 Reciprocality**

Section 1717(a) "represents the strongly held public policy of California" and "is mandatory, unavoidable and emphatic." *Ribbens Intern., S.A. de C.V. v. Transport Intern. Pool, Inc.*, 47 F.Supp.2d 1117, 1122 (C.D. Cal. 1999). "The primary purpose of section 1717 is to ensure mutuality of remedy for attorney fee claims under contractual attorney fee provisions." *Santisas v. Goodin*, 17 Cal.4th 599, 610, 71 Cal.Rptr.2d 830 (1998).

"[S]ection 1717 makes an otherwise unilateral right reciprocal, thereby ensuring mutuality of remedy, . . . 'when the contract provides the right to one party but not to the other.'" *Santisas*, 17 Cal.4th at 610-611, 71 Cal.Rptr.2d 830 (quoting *International Industries, Inc. v. Olen,* 21 Cal.3d 218, 223, 145 Cal.Rptr. 691 (1978)). "In this situation, the effect of section 1717 is to allow recovery of attorney fees by whichever contracting party prevails, 'whether he or she is the party specified in the contract or not.'" *Santisas*, 17 Cal.4th at 610-611, 71 Cal.Rptr.2d 830 (quoting Cal. Civ. Code, § 1717(a)). Section 1717 is "interpreted to further provide a reciprocal remedy for a nonsignatory defendant, sued on a contract as if he were a party to it, when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant." *Reynolds Metals Co. v. Alperson*, 25 Cal.3d 124, 128, 599 P.2d 83 (1979).

In addition, "section 1717 makes an otherwise unilateral right reciprocal, thereby ensuring mutuality of remedy, . . . when a person sued on a contract containing a provision for attorney fees to the prevailing party defends the litigation 'by successfully arguing the inapplicability, invalidity, unenforceability, or nonexistence of the same contract.'" *Santisas*, 17 Cal.4th at 610-611, 71 Cal.Rptr.2d 830 (quoting *North Associates v. Bell,* 184 Cal.App.3d 860, 865, 229 Cal.Rptr. 305 (1986)). "To ensure mutuality of remedy in this situation, it has been consistently held that when a party litigant prevails in an action on a contract by establishing that the contract is invalid, inapplicable, unenforceable, or nonexistent, section 1717 permits that party's recovery of attorney fees whenever the opposing parties

would have been entitled to attorney fees under the contract had they prevailed." *Santisas*, 17 Cal.4th at 610-611, 71 Cal.Rptr.2d 830. Nonetheless, section 1717 requires "that the party claiming a right to receive fees establish that the opposing party actually would have been entitled to receive them if he or she had been the prevailing party." *Leach v. Home Savings & Loan Assn.*, 185 Cal.App.3d 1295, 1307, 230 Cal.Rptr. 553 (1986).

The California Court of Appeal has explained:

> Where a plaintiff claims breach of a contract containing an attorney fee provision and the defendant asserts there is no contract and wins, it will have established that there is no contract and, hence, no attorney fee provision. Nevertheless, since the plaintiff would have been entitled to attorney fees if the plaintiff had succeeded in proving there was a contract, courts have recognized a right of the defendant to recover attorney fees even if defendant proves there was no contract, in order to further the purposes of Civil Code section 1717.

*M. Perez Co. v. Base Camp Condominiums Ass'n No. One*, 111 Cal.App.4th 456, 467, 3 Cal.Rptr.3d 563 (2003).

Ventilex BV notes that had Paramount Farms prevailed, it would be entitled to an attorney fees award. Ventilex BV argues that since it prevailed because it "was not a party to the alleged contract," section 1717 entitles Ventilex BV to attorney fees "to achieve the statutory mandate of mutuality of the attorneys' fees remedy."

Ventilex BV further notes that section 1717 applies "[i]n any action on contract" providing for attorney fees. Ventilex BV characterizes Paramount Farms' five claims as based "on a contract" providing for prevailing party attorney fees since each claim "allegedly arises under that Contract." Ventilex BV argues that Paramount Farms' breach of express warranty claim "arose out of and was to enforce the Contract because Plaintiff made the claim 'pursuant to the signed written Contract' and asserted that '[a]s a result of Ventilex's breach of express warranty, Ventilex is liable to PFI in excess of $5,000,000 . . . plus reasonable attorneys' fees.'"

Paramount Farms disagrees with Ventilex BV's analysis. Paramount Farms notes that it prosecuted its claims based on the approval guarantee and that "if it had prevailed at trial, Ventilex BV's obligations would have been circumscribed by and limited to that Guarantee" to provide Ventilex BV no "reciprocal right" to attorney fees with the approval guarantee's absence of an attorney fee clause. A "prevailing party is entitled to attorney fees only if it can prove it would have been liable for attorney

9

fees had the opponent prevailed." *M. Perez Co.*, 111 Cal.App.4th at 467, 3 Cal.Rptr.3d 563.

Paramount Farms characterizes as irrelevant the attorney fees allegations of its complaint. "The mere allegation in a complaint that the plaintiff is entitled to receive attorney fees does not provide a sufficient basis for awarding them to the opposing party if the plaintiff does not prevail." *Sessions Payroll Management, Inc. v. Noble Const. Co., Inc.*, 84 Cal.App.4th 671, 681-682, 101 Cal.Rptr.2d 127 (2000). "We know of nothing in our law that justifies awarding such fees to a party merely because his opponent asked for them. . . . So long as there is reciprocity in the allowance or disallowance of fees, the policy of that statute is satisfied. The statute does not purport to authorize an award where neither party would otherwise be entitled to one." *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal.App.4th 858, 899, 76 Cal.Rptr.3d 325 (2008).

The key problem for Ventilex BV is its failure to establish a reciprocal right to attorney fees. Paramount Farms correctly notes a "complete absence of evidence" on the "central issue" that Paramount Farms would have been entitled to attorney fees had it prevailed. The scope of Paramount's relief and remedies was the approval guarantee. Clearly, Ventilex BV was not a party to whatever documents formed the purchase contract between Paramount Farms and Ventilex USA to negate Ventilex BV's assertion that all of Paramount Farms' claims are based on contract. For the purposes of this action, Ventilex BV's involvement, and in turn its liability, was limited to the purported approval guarantee. At trial, Ventilex BV essentially disproved that it gave the approval guarantee. The parties point to no document that entitled Paramount Farms to attorney fees had it established Ventilex BV's approval guarantee. Section 1717 "cannot be bootstrapped to provide for attorney fees for breach of a contract that has no attorney fees provision." *Brittalia Ventures v. Stuke Nursery Co., Inc.*, 153 Cal.App.4th 17, 31, 62 Cal.Rptr.3d 467 (2007). At best, the attorney fees provision of the Paramount Farms Standard Conditions ran between Paramount Farms and Ventilex USA. In the end, Ventilex BV proved there was no approval guarantee as to it and in turn nothing to support attorney fees despite who prevailed as to the approval guarantee.

Moreover, the scope of the attorney fees provision is "litigation arising out of this Contract or the performance or enforcement of it." The litigation arose out of the approval guarantee and performance or enforcement of it. There is no attorney fees provision connected to the approval

guarantee. Ventilex BV is unable to bootstrap the attorney fees provision of the Paramount Farms Standard Conditions to the approval guarantee.

### Prevailing Party

Ventilex BV claims it "enjoys a complete victory" to be "considered the prevailing party as a matter of law."

Section 1717(b) provides that "the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract." California Code of Civil Procedure section 1032(a)(4) defines prevailing party to include "a defendant as against those plaintiffs who do not recover any relief against that defendant." "[W]hen the results of the litigation on the contract claims are not mixed – that is, when the decision on the litigated contract claims is purely good news for one party and bad news for the other – . . . a trial court has no discretion to deny attorney fees to the successful litigant." *Hsu v. Abbara*, 9 Cal.4th 863, 875-876, 39 Cal.Rptr.2d 824 (1995).

Ventilex BV is correct that it is a prevailing party – as to existence of an approval guarantee running from Ventilex BV to Paramount Farms. Ventilex is not a prevailing party on a contract action subject to section 1717. As such, this Court need not address the reasonableness of Ventilex BV requested attorney fees.

### CONCLUSION AND ORDER

For the reasons discussed above, this Court DENIES Ventilex BV's attorney fees motion.

IT IS SO ORDERED.

**Dated:   January 3, 2011**                         /s/ Lawrence J. O'Neill
                                                                          UNITED STATES DISTRICT JUDGE